**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the Putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARIA DEL PILAR PEREZ MEZA, JORGE MACUIL, and ADRIANA JUAREZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>                                       **Plaintiffs,**<br><br>-against-<br><br>**QUALITY FOOD BEST QUALITY GOOD HANDS LLC d/b/a FLORIDIAN PLAZA DINER, ESSAM BASSYONI, MICHAEL MOUDATSOS, and HASSAN E. OSMAN, Jointly and Severally,**<br><br>                                       **Defendants.** | **CLASS & COLLECTIVE<br>ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Maria del Pilar Perez Meza, Jorge Macuil, and Adriana Juarez (the "Plaintiffs"),

individually and on behalf of all others similarly situated, as collective and class representatives,

upon personal knowledge as to themselves and upon information and belief as to other matters,

alleges as follows:

## NATURE OF THE ACTION

1.      Defendant Quality Food Best Quality Good Hands LLC d/b/a "Floridian Plaza Diner" is the successor entity operating a long-time diner located at 2301 Flatbush Avenue, Brooklyn, New York 11234, which was initially opened in or around 1972.

2.      Plaintiffs are former non-management restaurant employees of Defendants who worked at the Floridian Plaza Diner during the relevant time period of this complaint.

3.      Throughout the relevant time period, Plaintiffs were not paid the applicable New York State minimum wage for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

4.      Plaintiffs bring this action to recover overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid minimum wages, spread of hours premiums, for unpaid "gap-time" wages, unreimbursed uniform purchase expenses, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

5.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the six (6) year period preceding the filing of this complaint, plus 228-day COVID-19 tolling period instituted by the Governor of New York in several Executive Orders between March and October 2020.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337

and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §
1367.

7.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA
pursuant to 29 U.S.C. § 216(b).

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial
part of the events or omissions giving rise to the claims occurred in this district.

9.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§
2201 and 2202.

10.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive
Order 202.8 in an effort to stem the spread of COVID-19, which tolls the thirty (30) days "any
specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion
or other process or proceeding" under New York State laws or court procedural rules. The thirty
(30)-day tolling period began on March 20, 2020 and continue until April 19, 2020. On April 7,
2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May
7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling
all statutes of limitations for an additional thirty (30) days through June 6, 2020. June 6, 2020. On
June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations
until July 6, 2020. On July 7, 2020, Governor Cuomo issues Executive Order 202.48 tolling all
statutes of limitations until August 5, 2020, Governor Cuomo issued Executive Order 202.55,
which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor
Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30)
days to October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the
tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a

tolling of the statute of limitations of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

11.     **Plaintiff Maria del Pilar Perez Meza ("Perez")** was, at all relevant times, an adult individual residing in Kings County, New York.

12.     Plaintiff Perez worked for Defendants as dishwasher, food prep, porter, and busser, from in or around November 2022 through in or around November 2024, when Plaintiff Perez was terminated from her employment after requesting sick days following a medical incident that occurred on the job (the "Perez Employment Period").

13.     Throughout the Perez Employment Period, Plaintiff Perez typically worked six (6) days per week, with most Thursdays off, with a schedule that varied depending on Defendants' needs at the diner. Specifically, Perez was often scheduled to work from 1:00 pm to 5:00 pm Saturdays and Sundays and from 8:00 am to 2:00 pm or 3:00 pm during the remaining four (4) days of the week, for a total of approximately thirty-four (34) to thirty-eight (38) hours per week. During the holidays throughout the year and especially at the end of each year, Plaintiff Perez was required to work at least one (1) or two (2) hours per day beyond her usual schedule to accommodate the large number of diners, for a total of approximately thirty-eight (38) to forty-two (42) hours per week.

14.     During the time period Plaintiff Perez worked as a back-of-the-house employee, which was most of her employment, Plaintiff was paid entirely in cash at a rate of thirteen dollars ($13.00) per hour for all hours worked, including those beyond forty (40) in a given workweek.

15.     For approximately the final month of her employment, Plaintiff Perez worked as a busser in the front of the house. During that time period, Plaintiff Perez was paid ten dollars

($10.00) per hour and occasionally received tips from servers at the diner.

16.     In order to work in the front of the house, Defendants required Perez to buy a t-shirt with the restaurant's name for twenty dollars ($20.00). In addition, Defendants automatically deducted twenty dollars ($20.00) per week from Perez's wages for meals, even though she did not always eat meals at the restaurant.  During that final month of her employment period, Plaintiff Perez received her wages entirely in cash without a pay stub or wage statement.

17.     As such, throughout Perez Employment Period, Plaintiff Perez was paid below the legally-required minimum wage in the City of New York. During the busy holiday season, she was not paid overtime consisting of one and one-half (1.5) times her regular hourly rate. As per Defendants' policy, Plaintiff Perez was not paid for any work performed beyond her set schedule.

18.     **Plaintiff Jorge Macuil ("Macuil")** was, at all relevant times, an adult individual residing in Kings County, New York.

19.     Plaintiff Macuil worked for Defendants as dishwasher and porter from in or around June 2023 to in or around January 2025, when he was terminated after suffering a stroke that left him partially paralyzed on the right side of his face (the "Macuil Employment Period").

20.     Throughout the Macuil Employment Period, Plaintiff Macuil typically worked six (6) days per week, with a schedule that varied depending on Defendants' needs at the diner. Plaintiff Macuil was often required to work from 7:00 am to 2:00 pm or 3:00 pm and sometimes from 4:00 pm to 10:00 pm or 11:00 pm.  In addition, on most days Defendants required Plaintiff Macuil to come early to the diner to start with his tasks for the day and he generally arrived fifteen (15) to thirty (30) minutes before his scheduled start time. Therefore, in addition to the forty (40) to forty-two (42) hours per week he was scheduled to work, Plaintiff Macuil often worked an additional one (1) to one and one-half (1.5) hours per week. During holidays throughout the year,

Plaintiff Macuil was required to work additional hours beyond his set schedule to help with the increased customer demand.  During the busy holiday season, therefore, he typically worked between forty-two (42) and forty-five (45) hours per week.

21.    Throughout the Macuil Employment Period, Plaintiff Macuil was paid entirely in cash at a rate of thirteen dollars ($13.00) per hour for all hours he was scheduled to work, including those beyond forty (40) in a given workweek. As such, throughout Plaintiff Macuil Employment Period, Plaintiff was paid below the legally-required minimum wage in the city of New York. In addition, he was not paid overtime premiums consisting of one and one-half (1.5) times his regular rate. Throughout the Macuil Employment Period, Plaintiff Macuil was only paid for his set schedule and not additional time spent working before his shift or at the end of his shift serving customers.

22.    **Plaintiff Adriana Juarez ("Juarez")** was, at all relevant times, an adult individual residing in Kings County, New York.

23.    Plaintiff Juarez worked for Defendants as a server from in or around March 2023 to in or around April 2024, when she was terminated following a drastic reduction in her hours (the "Juarez Employment Period").

24.    Throughout the Juarez Employment Period, Plaintiff Juarez typically worked six (6) days per week, with most Fridays off. During the first month of her employment, Plaintiff Juarez was required to work five (5) days per week with the following schedule:  Tuesdays from 11:00 am to 3:00 pm (4 hour shift), Wednesdays, from 7:00 am to 3:00 pm (8 hour shift), Thursdays from 8:00 am to 3:00 pm (7 hour shift), Saturdays from 11:00 am 11:00 pm (12 hour shift), and Sundays from approximately 11:00 am to approximately 9:00 pm (10 hour shift), for a total of approximately forty-one (41) hours per week that she was scheduled to work.

25.     After the first initial month of employment, Defendants added to Plaintiff Juarez's schedule a 6th day of work on Mondays from approximately 5:00 pm to approximately 10:00 pm, for a total of approximately forty-six (46) hours per week that she was scheduled to work.

26.     In addition to her scheduled hours, on most days Defendants required Plaintiff Juarez to stay at work for an additional one (1) or two (2) hours per day, beyond her regular schedule.  Plaintiff Juarez was only paid for the hours worked within the original schedule provided by Defendants. As such, on average, Plaintiff Juarez typically worked approximately forty-six (46) to fifty (50) hours per week during most of her employment.

27.     On many occasions, Plaintiff Juarez was subject to discriminatory and harassing comments and discussions by Defendant Essam Bassyoni, whom Plaintiff Juarez knew as "Sam." In particular, Defendant Bassyoni and the other managers of the diner frequently commented regarding Plaintiff Juarez's age and "old appearance," made sexual comments regarding younger female employees, commented in a derogatory manner about Plaintiff Juarez's ethnicity/national origin and gender, and stated that Defendants needed to get rid of all the "old" female employees working at the diner due to their "advanced age" and replace with them with younger male employees. After many of these discussions, in or around January 2024, Defendants reduced Plaintiff Juarez's schedule to five (5) days per week, five (5) hours per day, for a total of approximately twenty-five (25) hours per week.

28.     Throughout the Juarez Employment Period, Plaintiff Juarez was paid entirely in cash at the rate of ten dollars ($10.00) per hour. Plaintiff Juarez was paid the same rate for all hours for which she was scheduled to work, including those beyond forty (40) in a given workweek.  In addition, Juarez was required to purchase t-shirts and hats with the restaurant's name and logo to wear during her shifts. Each of these items cost twenty-five dollars ($25.00). In addition,

Defendants deducted twenty dollars ($20.00) per week from Plaintiff Juarez's wages for meals, even though she rarely ate meals at the restaurant.

29.     During the last two (2) weeks of employment Plaintiff Juarez was paid in a combination of cash and check, without an accurate pay stub that showed the actual number of hours worked during the pay period, rate of payment, and any deductions made to Plaintiff Juarez's wages.

30.     Throughout the relevant time period, Plaintiff Juarez was paid less than the full statutory minimum wage, did not receive overtime premiums of one and one-half (1.5) her regular hourly rate, and did not receive spread of hours premiums consisting of one (1) extra hour's pay at the minimum wage for days when she worked in excess of ten (10) hours.

31.     Throughout the relevant time period, Plaintiffs performed their work for Defendants at "Floridian Plaza Diner," located at 2301 Flatbush Avenue, Brooklyn, New York 11234.

32.     Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

33.     **Defendant Quality Food Best Quality Good Hands LLC** d/b/a "Floridian Plaza Diner," is an active New York corporation with its principal place of business and DOS address at 2301 Flatbush Avenue, Brooklyn, New York 11234.

34.     Quality Food Best Quality Good Hands LLC was initially registered with the New York State Department of State on December 22, 2020.

35.     Quality Food Best Quality Good Hands LLC is hereinafter referred as "Floridian Plaza Diner" or the "Corporate Defendant."

36.    **Defendant Essam Bassyoni (a/k/a Essam Elbassyoni)** ("Bassyoni") was, at all relevant times, an adult individual residing in Richmond County, New York.

37.    Upon information and belief, at all relevant times, Bassyoni is and has been an owner and operator of the Corporate Defendant.

38.    **Defendant Michael Moudatsos** ("Moudatsos") was, at all relevant times, an adult individual residing in Richmond County, New York.

39.    Upon information and belief, at all relevant times, Defendant Moudatsos is and has been an owner and operator of the Corporate Defendant.

40.    **Defendant Hassan Osman** ("Osman") (together with Bassyoni and Moudatsos the "Individual Defendants," and collectively with the Corporate Defendant, the "Defendants") was, at all relevant times, an adult individual residing in Monmouth County, New Jersey.

41.    Upon information and belief, at all relevant times, Defendant Osman is and has been an owner and operator of the Corporate Defendant.

42.    At all relevant times, the Individual Defendants maintained operational control over the Corporate Defendant and managed the Floridian Plaza Diner by determining the wages and compensation of employees, paying employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs and the Class and Collective Members.

43.    At all relevant times, the Individual Defendants employed Plaintiffs and the Class and Collective Members, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

44.    At all relevant times, the Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of

Plaintiffs and the Class and Collective Members, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

45.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

46.      At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

47.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

48.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since May 29, 2022 and through the entry of judgment in this case (the "Collective Action Period"), who worked as non-management employees at Floridian Plaza Diner located at 2301 Flatbush Avenue, Brooklyn, New York (the "Collective Action Members").

50.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime premiums for all work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

51.    Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

### **FED. R. CIV. P 23 NEW YORK CLASS ALLEGATIONS**

52.    Pursuant to the NYLL, Plaintiffs bring their Second through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since October 13, 2018 and through the entry of judgment in this case (the "Class Period"), who worked as non-management employees at Floridian Plaza Diner located at 2301 Flatbush Avenue, Brooklyn, New York (the "Class Members").

53.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

54.    The Class Members are so numerous that joinder of all members is impracticable.

55.    Upon information and belief, there are well in excess of forty (40) Class Members.

56.    Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members

regular wages for all hours worked each workweek;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

f.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members spread of hours premiums for days when they worked in excess of ten hours and/or worked a split shift;

g.  whether Defendants required Plaintiffs and the Class Members to wear a required uniform;

h.  whether Defendants required Plaintiffs and the Class Member to purchase their uniforms and failed to reimburse Plaintiffs and the Class Members for the purchase of their uniforms;

i.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

j.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

k.  whether Defendants failed to provide front of the house/tipped workers with a written notification of the tip credit;

l.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

m.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

57.  <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, were restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, not paid regular wages for all hours worked, not paid overtime premium for all hours worked over forty (40) hours in a given workweek, did not receive spread of hours pay for days when they worked in excess of ten (10) hours, did not receive reimbursement for all uniform purchase expenses they were required to incur, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

58.  <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

59.  Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

60.  <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

61.  Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendants.

62.  The individual members of the Class have no interest or capacity to bring separate

actions; Plaintiffs are unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## ADDITIONAL FACTUAL ALLEGATIONS

63.     Throughout the relevant time period, Defendants failed to provide Plaintiffs and the Collective and Class Members with a reliable method to track their actual number of hours each shift and, as such, were paid only for the hours scheduled by Defendants.

64.     Throughout the relevant time period, Defendants failed to pay Plaintiffs and the Collective and Class Members the New York statutory minimum wage for all hours worked. Defendants paid Plaintiffs and the Collective and Class Members a rate below the legally required minimum wage; moreover, Plaintiffs and the Collective and Class Members were often required to work additional hours beyond their set schedules without any compensation from Defendants.

65.     Throughout the relevant time period, ss per Defendants' policies, Plaintiffs and the Collective and Class Members were required to arrive at Defendants' restaurant at least fifteen (15) to thirty minutes (30) before their scheduled time to perform work at the diner, and were also required to stay one (1) or two (2) hours beyond their schedule time to cover for late or an absent employees and, in general, to help with customers and patrons of the restaurant. Although Plaintiffs and the Collective and Class Members often complained to their managers about the fact that those additional hours were not compensated by Defendants, Defendants required Plaintiffs and the Collective and Class Members to work these hours without pay without any change to their policies or practices.

66.     Throughout the relevant time period, as a result of Defendants' payment policies, at no time did Plaintiffs and the Collective and Class Members receive overtime premium pay

consisting of one and one-half (1.5) times their regular hourly rate for hours they worked in excess of forty (40) hours per week.  Plaintiffs and the Collective and Class Members were paid the same hourly rate (i.e., straight-time) for all hours worked, including those beyond forty (40) in a given workweek.

67.    Throughout the relevant time period, as a result of Defendants' payment policies, Plaintiffs and the Collective and Class Members did not receive spread of hours premium pay consisting of one (1) extra hour's pay at the applicable minimum wage for days that that they worked in excess of ten (10) hours per day.

68.    Throughout the relevant time period, Plaintiffs and the Collective and Class Members who worked as front-of-house employees incurred business expenses, specifically the costs of purchasing required uniform items which they only purchased and wore in relation to their employment. At no time did Defendants reimburse Plaintiffs and the Collective and Class Members for any of these expenses. As a result of these expenses, Plaintiffs' and the Collective and Class Members' effective hourly rate was further reduced below the applicable minimum wage.

69.    Throughout the relevant time period, Defendants paid Plaintiffs and the Collective and Class Members entirely in cash or in a combination of cash and check, without a pay stub or wage statement with their weekly payment of wages showing their accurate number of hours worked during the workweek, their true effective hourly rate(s), and any deductions or withholdings taken by Defendants from their payment.

70.    At no time during the relevant time period did Defendants provide Plaintiffs and the Collective and Class Members with a written wage notice or notice of tip credit setting forth their regular hourly rate(s), their regular payday, any deductions or credits claimed by Defendants,

any explanation of the tip credit, or any of the information required by NYLL § 198(1-b).

71.    As a consequence of Defendants' willful conduct by not providing to Plaintiffs and the Collective and Class Members wage statements and wage notices as per New York regulations, Plaintiffs and the Collective and Class Members suffered concrete harm and were prevented to confirm if Defendants were paying employees the amounts required by the law, advocate for better wages, and determine if there were discrepancies between the wages received and the wages indicated at the moment of hiring.

72.    In failing to provide the required wage notices and wage statements, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature.  The New York legislature concluded that enacting the wage notice requirement would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves.  Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly.

73.    Due to Defendants' failure to properly provide legally mandated notices such as an on-hire wage notice and weekly wage statements, Defendants were able to conceal the existence and magnitude of their wage and hour violations from Plaintiffs and the Collective and Class Members.  This resulted in the delayed payment of all proper wages to Plaintiffs and the Collective and Class Members.  Specifically, Defendants' failure to properly inform Plaintiffs, Collective and Class Members of their overtime pay rate and accurately account for all hours worked by Plaintiffs in weekly wage statements prevented Plaintiffs and the Collective and Class Members from comprehending the existence and magnitude of the violations alleged herein to which they were

subjected by Defendants.  As a result, Plaintiffs and the Collective and Class Members were unable to promptly seek rectification of these wage and hour violations and thus endured significant underpayment of their wages throughout their employment by Defendants.

74.     As a result of the above, Plaintiffs and the Collective and Class Members have suffered concrete, downstream consequences stemming from Defendants' failure to provide the required wage notices and wage statements.  Due to Defendants' failure to provide Plaintiffs and the Collective and Class Members with notice of their overtime hourly rates and include all hours worked and the proper overtime rate for such hours on weekly wage statements issued to Plaintiffs, Plaintiffs were unaware that they were being substantially underpaid throughout their employment.

75.     Because Plaintiffs and the Collective and Class Members were not properly apprised of their wage rates and hours, Plaintiffs and the Collective and Class Members lacked the ability to determine whether or not they had been underpaid in violation of law.  This ultimately lead to the continued underpayment of Plaintiffs' and Collective's and Class Members' required wages, which in turn made it difficult for Plaintiffs and the Collective and Class Members to pay bills and debts, as well as make other necessary purchases.

76.      Plaintiffs and the Class and Collective Action Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages and overtime premiums, failure to pay spread of hours premiums, failure to reimburse business expenses, failure to pay for all hours worked in a given workweek, and failing to provide wage notices and wage statements.

77.     Defendants were well aware of their failure to compensate Plaintiffs and the Collective and Class Members for all hours worked, as their company policy was to only pay for the hours scheduled by Defendants in a given workweek. Plaintiffs and members of the Collective

and Class complained to Defendants about the uncompensated work time but never received a satisfactory explanation regarding why those hours were not compensated, other than it was the Defendants' practice that had been in place for years at the Floridian Plaza Diner and at Defendants' other restaurant businesses. Defendants' policy of not compensating its workers for work performed at their place of employment was willful, in that it was done with knowledge that time worked, and additional time spent at the diner was done exclusively for Defendants' benefit and therefore should have been compensated as regular work time.

78.    On one occasion, Plaintiff Perez complained to Defendants that she intended to pursue a Department of Labor complaint against them for their failure to pay at least minimum wage and to pay for all hours worked. In response, Defendants told Perez that hers and the other workers' pay was low because she had "no papers" and could not speak English. Defendants provided a similar explanation to Plaintiff Macuil in response to one of his complaints regarding his low wage payments.

79.    Under knowledge and belief, Defendant Michael Moudatsos, a seasoned restauranteur, has been in the hospitality and food service industry for more than two decades and in addition to the Floridian Plaza Diner, Defendant Moudatsos owns, manages, and operates other active restaurants and diners in the city of New York including but not limited to:  Hylan Express Diner LLC (d/b/a "Hylan Diner" located at 2561 Hylan Blvd., Staten Island, New York 10306), which Defendant Moudatsos owns, operates, and manages with Defendant Hassan Osman; 921 Diner Inc. (d/b/a "Mike's Dakota Diner" located at 921 Richmond Avenue, Staten Island, New York 10314); Mike & Tommy Inc. (d/b/a "Mike's Olympic Grill" located at 1637 Forest Avenue, Staten Island, New York 10302); My Roula Inc. (d/b/a "Mike's Place" located at 4677 Hylan Blvd., Staten Island, New York 10312); and Mike's Unicorn Diner Inc (d/b/a "Mike's Unicorn

Diner" located at 2944 Victory Blvd., Staten Island, New York 10314).

80.    In addition to the active corporations, Defendant Michael Moudatsos also owned, managed and operated other food service establishments that are no longer in operation, including Siros Inc. (d/b/a "Mike's Country Club Diner" which was located at 2270 Clove Road, Staten Island, New York 10305); 8 Plus Corporation (d/b/a "Mike's New York Diner" which was located at 3423 Winton Place, Henrietta, New York 14623); Mike's Victory Bagel Express Inc. (d/b/a "Mike's Bagel Express" which was located at 1810 Victory Blvd., Staten Island, New York 10314), and Mike and Cathy's Sons Inc. and Stewart's Bay Ridge Corp. (d/b/a "Stewart's Restaurant" which was located at 8518 5th Avenue, Brooklyn, New York 11209).

81.    As an owner, manager, an operator of all those corporations, Defendant Moudatsos and his restaurants have been involved in several employment cases such as *Merino, et al v. Mike & Cathys's Sons, Inc. et al*, 1:20-cv-02850 (AMD)(MMH) a wage and hour case for unpaid wages filed at the Eastern District of New York (currently closed), among others.

82.    Defendant Hassan Osman, an equally seasoned restauranter, owns, manages, and operates other businesses in the city of New York including, but not limited to: Z-One Diner & Lounge Inc. (d/b/a "Z-One Diner" located at 1821 Richmond Avenue, Staten Island, New York 10314); and Z-Two Diner & Lounge Inc. (d/b/a "Z-Two Restaurant & Lounge" located at 2925 Veterans Road West, Staten Island, New York 10309.  Upon information and belief, as an owner, operator, and manager of Z-One Diner, Defendant Osman was investigated in or around 2016 by the New York Department of Labor, Docket No. PR 15-338, for wage and hour violations at the diner.

83.    Defendants' failure to comply with the federal and state law in paying Plaintiffs and the Collective and the Class Members for all wages owed, lacks any good faith basis under

the law and their conduct, given their prior knowledge of their obligations and responsibilities as employers, is unquestionably willful and done in knowing disregard of their legal obligations.

84.     Defendants' failure to pay wages according to the federal and New York regulations was a corporate policy which applied to all servers, bussers, counter/cashier employees, delivery employees, line cooks, food preps, dishwashers, and porters who performed work for Defendants at the Floridian Plaza Diner.

85.     Plaintiffs are aware that many other employees of Defendants left their employment with Defendants due to the unlawful payment practices complained of herein.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

86.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.     Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

88.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

89.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

90.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Class Members)

91.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.     Defendants willfully violated Plaintiffs', and the Class Members' rights by failing to pay at least the statutory minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

93.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Class Members)

94.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     Defendants violated the NYLL overtime rights of the Plaintiffs and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

96.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

97.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID GAP-TIME WAGES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

98.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     Defendants violated the NYLL rights of the Plaintiffs and the Class Members by failing to pay wages for all hours worked each week.

100.    During weeks when Plaintiffs and Class Members worked fewer than forty (40) hours, the hours that Defendants failed to pay should have been paid at Plaintiffs' and Class Member's regular rates.

101.    By failing to pay Plaintiffs and Class Members at their regular rate for all non-overtime hours worked each week, Defendants have violated NYLL § 663(1).

102.    Defendants' failure to pay wages for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid regular wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiff Juarez and the Class Members)

103.    Plaintiff Juarez, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.    Defendants willfully violated Plaintiff Juarez and Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where Plaintiff Juarez and Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, et seq., and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

105.    Defendants' failure to pay spread-of-hours compensation caused Plaintiff Juarez and Class Members to suffer loss of wages and interest thereon. Plaintiff Juarez and Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNIFORM VIOLATIONS**
**(Brought On Behalf of Plaintiffs Juarez and Perez and the Class Members)**

106.     Plaintiffs Juarez and Perez, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

107.     Defendants willfully violated the rights of Plaintiffs Juarez and Perez and the Class Members by failing to reimburse them for the purchase of their required uniforms, in violation of the NYLL §§ 650, *et seq*., and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.8 (2009), 146-1.7 & 1.8 (2011).

108.     Defendants' uniform violations caused Plaintiffs Juarez and Perez and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs Juarez and Perez and the Class Members are entitled to recover from Defendants the amount that Defendants failed to reimburse Plaintiffs Juarez and Perez and Class Members for the purchase of their uniforms, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663(I) *et seq.*

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

109.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay

and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

111.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
**(Brought on Behalf of Plaintiffs and the Class Members)**

112.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

113.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

114.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.    An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated damages and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.     An award of compensatory damages as a result of Defendants' failure to pay minimum wage for all hours worked pursuant to the NYLL and supporting regulations;

i.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wage pursuant to the NYLL and supporting regulations;

j.     An award of compensatory damages as a result of Defendants' failure to pay regular "gap-time" wages, pursuant to the NYLL and supporting regulations;

k.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay gap-time compensation pursuant to the NYLL and supporting regulations;

l.     An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

m.    An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

a.     An award of two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

b.     An award of compensatory damages arising out of the unreimbursed business expenses;

c.     An award of liquidated damages arising out of the unreimbursed business expenses;

d.     An award of prejudgment and post-judgment interest;

e.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

f.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        May 29, 2025

                                    Respectfully submitted,

                                    **PELTON GRAHAM LLC**


                                    By: _____
                                    Brent E. Pelton (BP 1055)
                                    Taylor B. Graham (TG 9607)
                                    111 Broadway, Suite 1503
                                    New York, New York 10006
                                    Telephone: (212) 385-9700
                                    Facsimile: (212) 385-0800
                                    Email: pelton@peltongraham.com
                                           graham@peltongraham.com

                                    *Attorneys for Plaintiffs and the Putative*
                                    *FLSA Collective and Class*

29

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of **QUALITY FOOD BEST QUALITY GOOD HANDS LLC,** are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and the class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of **QUALITY FOOD BEST QUALITY GOOD HANDS LLC** and charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6) year period preceding the filing of the complaint.

Dated: May 29, 2025

_____
Brent. E. Pelton

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Quality Food Best Quality Good Hands LLC d/b/a Floridian Plaza Diner** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

JORGE YACUIL
Printed Name

**CONSENTIMIENTO PARA SER UN DEMANDANTE**

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de **Quality Food Best Quality Good Hands LLC haciendo negocios como Floridian Plaza Diner** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

JORGE YACUIL
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Quality Food Best Quality Good Hands LLC d/b/a Floridian Plaza Diner** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          Maria Del Pilar Perez Meza
Signature                                 _____
                                          Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de **Quality Food Best Quality Good Hands LLC haciendo negocios como Floridian Plaza Diner** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluye honorarios), cual sea la suma más alta.

_____          Maria Del Pilar Perez Meza
Firma                                     _____
                                          Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Quality Food Best Quality Good Hands LLC d/b/a Floridian Plaza Diner** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          Adriana Juarez
Signature                                         _____
                                                  Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de **Quality Food Best Quality Good Hands LLC haciendo negocios como Floridian Plaza Diner** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (_____), cual sea la suma más alta.

_____          Adriana Juarez
Firma                                             _____
                                                  Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.